Argued and submitted January 30, vacated and remanded in part; otherwise affirmed March 13, 2002

STATE OF OREGON,
*Respondent,*

*v.*

REYNA MENDOZA PACHECO,
*Appellant.*

99CF063; A111243

42 P3d 351

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, State Public Defender.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

■     This appeal presents a novel question: Did the trial court err in ordering defendant, an illegal alien, to pay over $20,000 in restitution to the State of Oregon, notwithstanding that defendant cannot work lawfully in the United States because of her undocumented status? We conclude that the trial court's stated rationale in fixing restitution does not support the imposition of restitution of the amount, and on the terms required. Accordingly, we vacate the court's award of restitution and remand for further proceedings.

The material facts are undisputed. Defendant, a Mexican national, was an undocumented alien. She and her family[1] lived in the Boardman area, where she worked unlawfully for several years. Between October 1996 and April 1999, defendant fraudulently obtained various public assistance benefits totaling $20,218.

In August 1999, defendant was charged with multiple counts of unlawfully obtaining public assistance, ORS 411.630; welfare provider fraud, ORS 411.675; theft in the first degree, ORS 164.055; and forgery in the first degree, ORS 165.013. In May 2000, pursuant to a negotiated agreement, defendant pleaded guilty to one count of unlawfully obtaining public assistance. The court sentenced her to 18 months of probation, with misdemeanor treatment upon completion, and ordered that she pay full restitution for the state's loss. Specifically, the court ordered the entry of a money judgment of $20,382, including restitution of $20,218;[2] directed that the restitution obligation be docketed as a civil judgment; and specified that defendant repay that judgment at the rate of $100 per month beginning in August 2000.

The sole issue on appeal is whether the court erred in setting the amount and terms of restitution. At the core of the dispute is the colloquy between counsel and the court at the restitution hearing, which occurred in July 2000. At that

---

[1] Three of defendant's children are citizens of the United States.

[2] The balance of the money judgment included a unitary assessment, a Umatilla County Jail assessment, and an assessment for "law enforcement medical liability."

hearing, the state presented the testimony of two witnesses, both representatives of the Adult and Family Services Division, who described the circumstances and extent of defendant's fraudulent receipt of public assistance benefits. Both witnesses confirmed that defendant was an undocumented alien, and one briefly referred to her employment history with two different employers over the preceding years. However, neither witness testified regarding the nature of defendant's work or her earnings. Defendant did not testify.

The state then asserted that the court should order restitution in the full amount of the benefits that defendant had fraudulently obtained:

> "[T]he balance on this of course is Ms. Pacheco's ability to pay the $20,000 debt over a period of probation which is going to be set by the court. I don't think the court could set any type of a payment plan in two years for her to pay a $20,000 debt.
>
> "So certainly the state would be looking at that point to have this docketed as a civil judgment * * * [b]ut then she knows and everybody here will know that when the probation terminates, whatever portion of that judgment remains unpaid will be collected under ordinary courses like any other judgment, through wage garnishment, through bank garnishment.
>
> "And at that point, the function of the bargain sets up, what she can afford to pay, what her ability to pay is. If she is making a good paying job and she's getting garnished at 10 or 20 percent of her paycheck, whatever the garnishment is, that bargain for us will determine whether she's got the ability to pay this debt off or not.
>
> "The concern that the State has in doing that is she'll just go out and work under someone else's name. We'll have a judgment in the name of— against [defendant]. She will be out there working as Mirabella Rojas [the false name defendant used previously]. * * * [I]f I submitted a garnishment [to an employer] in the name of [defendant] and was telling [them] to take money out of Mirabella Rojas' check, I would note that they wouldn't do that. So the collection of this judgment ultimately may be problematic as well."

Defendant's counsel responded:

*"The court in imposing a money judgment on [defendant] would be requiring her to satisfy that by working illegally in the United States.* I think that this case may point out some problem areas in Adult and Family Services. * * * I would argue, in substance, Your Honor, that [defendant] has no ability to pay a money judgment inasmuch as she does not have the ability to work in the United States." (Emphasis added.)

Counsel for the state then replied:·

"Well, Your Honor, it seems somewhat inconsistent to me to say on the one hand that she doesn't have the right to work in this country, and so therefore she can't pay money that she stole from the State. It just seems totally incongruous that an illegal alien can somehow benefit from their status and not be required to pay money back because they're not allowed to work legally, which is the whole reason that she stole the money in the first place.

"* * * * *

"She was not entitled to these benefits. And if she can't figure out a way to make a living here and work legally, then as crass as it may sound, she needs to go somewhere she can legally work and do it legally. And I am not trying to be crass. I understand that she has three children. But at some point, the law is the law, and you can't say wink, wink, nod, nod, go work illegally and then pay this back.

"So I understand the dilemma, but the fact remains. [Defendant] received $20,000 in benefits she was not entitled to. And the State taxpayers deserve to have their money paid back."

The court then ruled:

"I don't find that you have the ability to pay during the term of probation the entire balance of the restitution. That is why I'm agreeing with the State and ordering that that be docketed as a civil money judgment. *I do find that you have the ability based on your prior employment history and this is somewhat of a conundrum because of the fact that you are an illegal alien, therefore can't work, therefore it's a circular argument.*

*"But I feel like it's necessary to impose a payment schedule in this case given the fact that you had employment in the past, whether or not that was legal or not. And I'm going to*

impose in this finding that you make payments of $100 per month." (Emphasis added.)

On appeal, defendant argues that the court's imposition of restitution does not comport with ORS 137.106 (1997), which provided, in part:

"(1) When a person is convicted of criminal activities * * * which have resulted in pecuniary damages * * * the district attorney shall investigate and present to the court, prior to or at the time of sentencing, evidence of the nature and amount of such damages. In addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim.

"(2) In determining whether to order restitution which is complete, partial or nominal, the court shall take into account:

"(a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard for the other obligations of the defendant;

"(b) The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court; and

"(c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment."

In particular, defendant argues that the court did not "take into account" her ability to pay restitution—or, at least, could not have done so rationally—in that she could not work lawfully in the United States:

"The reason that defendant's conduct was a crime was that defendant is an undocumented alien. For the same reason, defendant is not employable in this country. Accordingly, there was no basis for the court to conclude that she had an ability to pay any amount toward restitution without committing another crime, which would violate other terms of her probation. The sentencing court acknowledged that that was the case, yet dismissed the problem as a 'conundrum' subject to appeal to this court. That was unreasonable and erroneous."

The state responds that the award of restitution should be affirmed as, at least implicitly, taking into account defendant's ability to work *lawfully* for either of two reasons.

First, the state asserts, the trial court might have concluded that defendant could return to Mexico and work legally there. Second, the state posits that, because defendant was convicted only of a misdemeanor, she might still at some point in the future—*i.e.*, within the 20-year period that the civil judgment will remain docketed—become an American citizen or otherwise be lawfully permitted to work in the United States.

We agree with defendant that the award of restitution in the amount of $20,218, to be repaid at a rate of $100 a month, must be vacated and remanded for reconsideration. On this record, neither of the state's putative justifications passes muster. There is no evidence in this record that defendant could return to Mexico and earn income permitting her to meet restitution repayment obligations of $100 per month. Nor is there any evidence regarding the likelihood of defendant ever being authorized to work lawfully in the United States.[3]

Even more to the point, the trial court did not fix the amount and terms of restitution on either of those grounds. Rather, the court, though acknowledging the "conundrum," explicitly based its "ability to pay" determination solely on defendant's "prior employment history"—a history which, on this record, consisted solely of working illegally as an undocumented alien. Although the restitution statutes do not address the matter directly, we agree with defendant that a court cannot base its "ability to pay" determination on a premise that a defendant will continue to engage in unlawful conduct and that the proceeds of that conduct can be applied towards satisfying a restitution obligation. Indeed, fixing restitution on that basis could be regarded as implicitly sanctioning, and benefitting from, unlawful conduct.[4]

In sum, the trial court's stated rationale does not justify the imposition of restitution of $20,218, to be repaid at a

---

[3] That is unsurprising, given that the state never urged that rationale for restitution before the trial court.

[4] Consider a more graphic, but analogous, hypothetical: A defendant with an established history of dealing drugs, or robbing banks, is ordered to pay restitution. Could the court, in imposing restitution, base its "ability to pay" determination on a projection that the defendant will continue to sell drugs or rob banks in the future?

rate of $100 a month. It may be that, on this record, the court could exercise its discretion to impose restitution in that amount, or some lesser amount, on some basis other than that which the court expressed, and we do not foreclose that possibility. Accordingly, we vacate that portion of the money judgment awarding restitution of $20,218 and remand for further proceedings.

Portion of money judgment awarding restitution of $20,218 vacated and remanded for further proceedings; otherwise affirmed.